IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| MARK R. GOODWIN, et al., | * |
| Plaintiffs | * |
| v. | *  Civ. No.: MJM-24-1217 |
| THE JOHNS HOPKINS UNIVERSITY, et al., | * |
| Defendants. | * |

## MEMORANDUM

This matter is before the court on defendants Johns Hopkins University, Dr. Muyinatu Bell, and Joshua Shubert's Motion to Dismiss the Complaint filed by Mark R. Goodwin and Cutting Edge Surgical, Inc.. The motion is fully briefed and ripe for disposition. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For reasons explained below, Defendants' motion shall be granted, and the Complaint shall be dismissed without prejudice.[1]

I.   **FACTUAL BACKGROUND**

Plaintiffs Mark R. Goodwin and his business Cutting Edge Surgical, Inc. (together, "Plaintiffs") filed this civil action against Johns Hopkins University ("JHU"), Dr. Muyinatu Bell, and Mr. Joshua Shubert (collectively, "Defendants"), alleging Breach of Contract (Count I), Fraud (Count II), Conversion (Count III), Unfair Competition under Maryland law (Count IV), Unfair

---

[1] Plaintiffs also filed a Motion for Leave to File a Surreply, which was unopposed by Defendants. ECF 26. The Court will grant the motion.

Competition under the Lanham Act (Count V), and Declaratory Judgment (Count VI). The action arises from an alleged breach of contract and misappropriation of Plaintiffs' spinal navigation surgery techniques. The technique in question is photoacoustic imaging intra osteal navigation and interrogation "PA-IONI technology," which was allegedly developed by Plaintiffs. Complaint ¶ 1. Plaintiffs allege that Mr. Goodwin spent "hundreds of thousands of dollars" and "years of his life" developing the technology. *Id*. ¶ 2. Plaintiffs took the technology to Johns Hopkins University for validation and proof of principle studies to assist Plaintiffs in reducing PA-IONI technology to practice. *Id*. ¶ 3. The studies were performed by Dr. Bell and Mr. Shubert, her student, under a 2017 Sponsored Research Agreement ("2017 SRA"). *Id*.; Compl. Ex. 1. The 2017 SRA was an agreement between Plaintiffs and Defendants that allowed Plaintiffs to disclose PA-IONI technology and other proprietary information, protocols, and trade secrets in exchange for Defendants performing the studies. Id.

> The 2017 SRA includes the following Governing Law provision:
>
>> This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland (excepting the application of UCITA and any conflict of laws provisions which would serve to defeat application of Maryland substantive law). ***Each of the parties hereto agrees to attempt to resolve any dispute initially by mediation.*** However, if that is unsuccessful, each of the parties hereto agrees to venue in and submits to the exclusive jurisdiction of the state and/or federal courts located within the State of Maryland for any suit, hearing or other legal proceeding of every nature, kind and description whatsoever in the event of any dispute or controversy arising from or relating to this Agreement, or in the event any ruling, fmding or other legal determination is required or desired hereunder. Both parties agree to waive their respective rights to a trial by jury.

*Id*. ¶ 18 (emphasis added).

## II.   STANDARD OF REVIEW

2

To survive a Rule 12(b)(6) motion to dismiss, a Plaintiffs must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiffs pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint need not include "detailed factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). While the Court does not typically consider any material beyond the face of the complaint when deciding a motion to dismiss, the court may consider additional documents "when the document is integral to and explicitly relied on in the complaint, and when the Plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)) (*see also Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)).

**III.   DISCUSSION**

As noted in Part I *supra*, the Governing Law provision of the 2017 SRA states, in relevant part that each party agrees "to attempt to resolve any dispute initially by mediation" prior to litigation. Compl. Ex. 1, ¶ 18. The plain language of this mediation provision makes an attempt to resolve any dispute between the parties by mediation a condition precedent to filing suit. Applicable to "any dispute" between the parties, this mediation provision is broad in scope. Plaintiffs here do not dispute that the mediation provision covers the claims asserted in this case and that, pursuant to this provision, attempting mediation is a condition precedent to filing the

3

instant suit. Instead, Plaintiffs, on one hand, suggest that the provision should not be enforced against them, while, on the other hand, they argue that they satisfied the provision before filing this action. Pl. Opp'n at 16–17.

"[A] contractual provision requiring mediation before the filing of litigation is enforceable" under principles of Maryland contract law. *Pac. Home Improvement, LLC v. Rodriguez*, Civ. No. TDC-21-1788, 2022 WL 13956160, at *3 (D. Md. Oct. 21, 2022); *see also Annapolis Pro. Firefighters Loc. 1926, IAFF, AFL-CIO v. City of Annapolis*, 642 A.2d 889, 895 (Md. Ct. Spec. App. 1994) ("[A]s a matter of Maryland common law, . . . a written agreement to submit either an existing or a future dispute to a form of alternative dispute resolution that is not otherwise against public policy will be enforced at least to the same extent that it would be enforced if the chosen method were arbitration."). "The mutual exchange of promises to engage in mediation before filing suit is sufficient consideration to enforce such a mediation clause." *Pac. Home Improvement*, 2022 WL 13956160, at *3 (citing *Holmes v. Coverall N. Am.*, 649 A.2d 365, 370 (Md. 1994)). Where a mediation requirement is broad in scope, as it is in the instant case, the court "should resolve doubts in favor of mediation." *3-J Hosp., LLC v. Big Time Design, Inc.*, Civ. No. 09-61077, 2009 WL 3586830, at *2 (S.D. Fla. Oct. 27, 2009) (citing *Solvay Pharmaceuticals, Inc. v. Duramed Pharmaceuticals, Inc.,* 442 F.3d 471, 482 n. 10 (6th Cir.2006)).

"Courts have frequently enforced contractual provisions requiring the parties to engage in mediation before filing suit by dismissing the case if the requirement was not satisfied." *Pac. Home Improvement*, 2022 WL 13956160, at *3–4 (citing cases); *see also Brosnan v. Dry Cleaning Station Inc.*, No. C-08-02028 EDL, 2008 WL 2388392, at *1 (N.D. Cal. June 6, 2008) ("Failure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal.") (citation omitted); *3-J Hosp.*, 2009 WL 3586830, at *2 ("Where the

parties' agreement requires mediation as a condition precedent to arbitration or litigation, the complaint must be dismissed.") (citation omitted); *Tattoo Art, Inc. v. Tat Int'l, LLC*, 711 F. Supp. 2d 645, 651 (E.D. Va. 2010) ("A number of courts have found that when parties to a lawsuit have elected not to be subject to a court's jurisdiction until some condition precedent is satisfied, such as mediation, the appropriate remedy is to dismiss the action.") (citing cases); *Martin v. 21st Mortg. Corp.*, No. 123, Sept. Term, 2023, 2024 WL 1045461, at *4–5 (Md. Ct. Spec. App. Mar. 11, 2024) (affirming dismissal of civil action initiated before satisfaction of contractual mediation provision).

Plaintiffs argue first that dismissal based on the 2017 SRA's mediation provision is barred by the doctrine of unclean hands. Opp'n at 16. The doctrine of unclean hands is a doctrine of equity. "The purpose of the unclean hands doctrine is to prevent the court from assisting in fraud or other inequitable conduct…." *United Bank v. Buckingham*, 761 F. App'x 185, 191 (4th Cir. 2019) (quoting *Mona v. Mona Elec. Grp., Inc.*, 934 A.2d 450, 474 (Md. App. 2007)). The doctrine "den[ies] relief to those guilty of unlawful or inequitable conduct with respect to the matter for which relief is sought." *Id*. (quoting *Mona*, 934 A.2d at 474). For the doctrine to bar relief as a matter of equity, the misconduct of the party with unclean hands "must be directly related" to the right that party asserts or the relief it seeks. *Mona*, 934 A.2d at 474 (quoting *Smith v. Cessna Aircraft Co.*, 124 F.R.D. 103, 106 (D. Md. 1989)).

Plaintiffs contend that the unclean hands doctrine applies here because Defendants "(i) fraudulently induced Plaintiffs to enter into the 2017 SRA, (ii) fraudulently withheld the Concealed Applications, and (iii) refused to offer or engage in mediation when Mr. Goodwin requested to be named a joint-inventor." Pl. Opp'n at 16. The Court is not persuaded. First, Plaintiffs do not allege any fraudulent conduct directly related to the mediation provision in the 2017 SRA. They do not

5

allege, for example, that Defendants fraudulently induced Plaintiffs to agree to make mediation a condition precedent to filing suit. Importantly, Plaintiffs do not contend that either the 2017 SRA, as a whole, is invalid or unenforceable. To the contrary, Plaintiffs allege multiple times in the Complaint that "[t]he 2017 SRA is a valid, binding, and enforceable contract[,]" Compl. ¶¶ 176, 208, and they seek to enforce it through their breach-of-contract claim in Count I, *Id*. ¶¶ 174–205. Second, Plaintiffs do not allege in their Complaint that they requested mediation at any point or that Defendants rejected any such request.

Plaintiffs do allege in the Complaint that the parties "have been unsuccessfully negotiating intermittently for since mid-2023 significant expense [sic] to Mr. Goodwin, and upon [sic] and belief, no further informal discussions between Mr. Goodwin and Defendant JHU would be helpful in resolving the instant dispute(s)." Compl. ¶ 83. In opposition to Defendants' motion, Plaintiffs argue that the foregoing allegations are sufficient to satisfy the mediation requirement in Paragraph 18 of the 2017 SRA. Again, the Court is unpersuaded. The mediation provision in the 2017 SRA requires the parties "to attempt to resolve any dispute initially by mediation." Compl. Ex. 1, ¶ 18. Mediation is "[a] method of nonbinding dispute resolution involving a neutral third party who tries to help the disputing parties reach a mutually agreeable solution[.]" *Mediation*, Black's Law Dictionary (12th ed. 2024). Intermittent negotiation directly with opposing parties without the assistance of a mediator does not equal mediation.

The declaration of attorney Branko Pejic, attached to Plaintiffs' opposition brief, states that the parties' negotiations began with a "zoom call" in November 2023, during which the parties discussed whether to engage a third party to mediate their dispute or, instead, "continue informal settlement negotiations." Pejic Decl. ¶ 5. The parties mutually opted for the latter but, ultimately, did not reach agreement to any resolution. *Id*. ¶¶ 5, 9. Plaintiffs concluded that "settlement without

some amount of discovery . . . would not be possible[,]" *id.* ¶ 9, and, "with the statute of limitations running," elected to file suit, Pl. Opp'n at 17.

Even if the Court were permitted to consider counsel's representations on a Rule 12(b)(6) motion to dismiss, which it cannot, they would not suffice to show that Plaintiffs satisfied the mediation requirement. To the contrary, counsel's declaration shows that Plaintiffs declined to satisfy the mediation requirement. While it is true that JHU also declined mediation in November 2023, the parties' agreement "to continue informal settlement negotiations" at that time did not amount to a permanent waiver of each party's right to mediation of their dispute before suit was filed. *See Brendsel v. Winchester Const. Co.*, 898 A.2d 472, 479 (Md. 2006) (Waiver of a contractual right "must be clear and unequivocal").

The Court finds that the allegations in the Complaint do not establish Plaintiffs' satisfaction of the 2017 SRA's mediation provision. Plaintiffs do not allege that they "attempt[ed] to resolve" their disputes with Defendants "initially by mediation[]" before filing the instant suit. Compl. Ex. 1, ¶ 18. Defendants now invoke their right to mediation and request dismissal of the instant suit to enforce that right. The Court finds dismissal to be warranted in these circumstances. *See Pac. Home Improvement*, 2022 WL 13956160, at *3–4; *3-J Hosp*, 2009 WL 3586830, at *2; *Brosnan*, 2008 WL 2388392, at *1; *Tattoo Art*, 711 F. Supp. 2d at 649–52.[2]

---

[2] The Court has considered whether ordering a stay pending mediation would be appropriate in this case. *See N-Tron Corp. v. Rockwell Automation, Inc.*, Civ. No. 09-0733-WS-C, 2010 WL 653760, at *7–8 (S.D. Ala. Feb. 18, 2010) (granting stay of a breach of contract action upon Plaintiff's request, allowing the parties to submit to contractually agreed upon mediation where failure to do so would foreclose plaintiff from recovery due to the expiration of the statute of limitations). The Court declines to order a stay in the instant case. *See Clinton v. Jones,* 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). Here, no party requests a stay pending mediation, and it appears that Plaintiffs have taken the position that mediation would not be productive until after "reasonable discovery." *See* Pejic Decl. ¶ 11 (stating that Mr. Pejic advised opposing counsel "that Plaintiffs would consider a proposal to request the Court to assign [the parties] to a Magistrate Judge for ADR after conducting reasonable discovery in parallel with the litigation, and that further discussions absent discovery would be a poor use of the parties' time and resources"). Plaintiffs' position that pre-

This Court recognizes, as the court in *Tattoo Art* recognized, that dismissal of this case "may ultimately prove inefficient and futile because the parties are not required to actually resolve the dispute through mediation." *Tattoo Art*, 711 F. Supp. 2d at 652. The mediation requirement in the 2017 SRA only requires an "*attempt* to resolve" the parties' dispute "initially by mediation." Compl. Ex. 1, ¶ 18. Still, "by failing to request mediation prior to filing this lawsuit, Plaintiff[s] denied Defendants the benefit of their bargain." *Tattoo Art*, 711 F. Supp. 2d at 652. Ultimately, Plaintiffs "failed to satisfy the condition precedent necessary to trigger the right to initiate litigation." *Id*. Dismissal is therefore warranted.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss shall be granted. The Complaint will be dismissed without prejudice.

A separate Order will follow.

DATE: 3/31/25

Matthew J. Maddox
United States District Judge

---

litigation mediation would not be productive, of course, does not excuse setting aside the 2017 SRA's pre-litigation mediation requirement.